**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

FILED

JAN 2 1 2009

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

CRYSTAL J. ROACH,       )
    Plaintiff,          )
                        )
    v.                  )      No. 1:08cv225
                        )
OPTION ONE MORTGAGE CORP., et al.,  )
    Defendants.         )

## MEMORANDUM OPINION

In this TILA[1] suit, plaintiff, proceeding *pro se*, claims that when she refinanced her home

mortgage in January 2005, the lender's agent misled her with respect to the monthly payment

amounts she would be required to make pursuant to the adjustable rate mortgage ("ARM") she was

assuming. Specifically, plaintiff contends that the lender's agent falsely represented to her that

notwithstanding the contrary statements in the loan documents, her monthly payments would never

exceed certain amounts. Defendants seek dismissal on the ground that plaintiff's claim is barred by

TILA's one-year statute of limitations and on the further ground that certain of the named defendants

are not "creditors" subject to TILA. Plaintiff seeks to avoid the one-year limitations bar by arguing

that the lender's agent's misrepresentation that her payments would never exceed certain amounts

warrants equitable tolling of TILA's statute of limitations. Defendants counter that the individual

plaintiff claims made such misrepresentations to her was not defendants' agent, and that even if

plaintiff could prove to the contrary, TILA's one-year statute of limitations nonetheless still bars

plaintiff's suit because she did not file her TILA claim within one year of discovering the alleged

---

[1] Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA").

-1-

fraud. Plaintiff responds that she complied with TILA's statute of limitations because she raised her TILA claim at a bankruptcy proceeding she filed within one year of becoming aware that her payments were not fixed as she had believed. Finally, defendants argue in the alternative that even if plaintiff's TILA claims are not time-barred, the undisputed facts nonetheless show that defendants complied with all applicable TILA disclosure requirements.

Defendants' motion to dismiss, now appropriately treated as a motion for summary judgment,[2] has been fully briefed and argued, including supplemental briefing and oral argument. Accordingly, the matter is now ripe for disposition. For the reasons that follow, defendants are entitled to summary judgment.

## I[3]

Plaintiff Crystal J. Roach, a Virginia resident, is employed as a program examiner for the Office of Management and Budget. She holds a bachelor's degree in political science and a master's degree in public policy. Defendant Option One Mortgage Corp. ("Option One") is a mortgage lender that was, prior to 2007, a California corporation that maintained an office in Herndon, Virginia. In 2007, defendant H&R Block, Option One's parent company, sold Option One to American Home Mortgage Servicing, Inc., a Texas corporation. Defendant Deutsche Bank Trust Co. ("Deutsche

---

[2] Although the instant motion was filed as a motion to dismiss, it is now appropriately treated as a motion for summary judgment because information beyond the amended complaint's allegations has been considered. *See* Rule 12(d), Fed. R. Civ. P. It is also worth noting that the parties received a "reasonable opportunity to present all the material that is pertinent to the motion," including supplemental briefing and oral argument on the questions presented. *Id.*

[3] The facts recited here are derived from the record as a whole and are largely undisputed. Where disputes exist, they are noted, and if material, the analysis proceeds on the assumption that the disputed fact is as plaintiff contends. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985).

Bank"), serves, *inter alia*, as a trustee holder of secured mortgage deeds of trust for the types of mortgages provided by Option One. And 1st Principle Mortgage, LLC ("1st Principle"), a Virginia corporation not named as a defendant here,[4] serves as a broker between lenders like Option One and homeowners who seek to refinance their mortgages.

In 2004, plaintiff owned a four-bedroom home in Prince William County, Virginia. The home served as plaintiff's principal residence, and her parents and sister lived in the home with her. At some point between July 2004 and January 2005, plaintiff decided to help finance her sister's pursuit of a master's degree in a study-abroad program. Plaintiff did so by refinancing her existing mortgage in order to take advantage of an increase in the value of her home and obtain cash proceeds. To this end, she dealt with Ryan Samuel,[5] a mortgage broker employed by 1st Principle. Specifically, Samuel arranged a refinancing agreement between plaintiff and Option One. Pursuant to the terms of the agreement, Option One provided plaintiff with a cash payment of $79,690.81 at the January 28, 2005 closing in exchange for plaintiff's assumption of an ARM on her residence. At that time, plaintiff was presented with, and signed, each of the following documents:

- A thirty-year "Adjustable Rate Note," which provided, *inter alia*:

    (i)    an initial 24-month fixed interest rate of 6.75%;

    (ii)   a "Change Date" of February 1, 2007, at which point the interest rate could increase to as much as 9.75% based on an agreed-upon market index;

    (iii)  the possibility, after the initial Change Date, of adjustments to the interest rate of as much as a full percentage point, but

---

[4] Plaintiff named 1st Principle, the mortgage broker, as a defendant in her amended complaint, but then voluntarily dismissed 1st Principle in July 2008.

[5] Ryan Samuel is not a named defendant.

only based on the agreed-upon index and only after six months at any given rate; and

(iv)     a fixed range of 6.75% to 12.75%, within which the interest rate would remain regardless of the agreed-upon index.

- A "Settlement Statement," which provided, *inter alia*:

(i)      payoff of plaintiff's prior mortgage in the amount of $588,088.22;

(ii)     settlement charges to Option One of $16,471.17, which included a $8,653.18 "broker fee" to be paid to 1st Principle;

(iii)    a new loan amount of $684,250; and

(iv)     cash payment to plaintiff of $79,690.81.

- A one-page "Truth in Lending Disclosure Statement" ("TILA Disclosure Statement"), which included, *inter alia*:

(i)      a checked box at the top of the page marked "Final";

(ii)     specific disclosures in clearly-identified boxes regarding the annual percentage rate, finance charge, amount financed, and total of payments;

(iii)    a payment schedule, listed as follows:

- "24 payments of $3,848.91 monthly, beginning Mar[.] 01, 2005"

- "36 payments of $4,918.05 monthly, beginning Mar[.] 01, 2007"

- "300 payments of $5,567.52 monthly, beginning Mar[.] 01, 2010"

(iv)     a checked box marked "Variable Rate," located immediately beneath the payment schedule and followed by the statement, "This transaction is subject to a Variable Rate Feature. Disclosures about Variable Rate Feature have been provided to you earlier."

- An "Adjustable Rate Mortgage Loan Program Disclosure," which included, *inter alia*:

    (i)   an explanation of how the interest rate would be calculated;

    (ii)  statements that the interest rate "is fixed for the first 24 months" and "can change after 24 months and every 6 months thereafter";

    (iii) an example of possible monthly payment increases, based on a $10,000 mortgage, from a beginning payment of $39.58 per month to a payment at the end of the fourth year of $89.58 per month; and

    (iv)  a notation that the "periodic payment may increase or decrease substantially depending on changes in the interest rate."

- An "Addendum to [the Adjustable Rate] Note for the Interest Only Payment Period," which included an acknowledgment that the interest rate "may change on the first day of February 01, 2007, and on that day every sixth month thereafter . . . ."

- A "Summary of the Terms of Your Loan," which provided that the ARM was subject to an adjustable interest rate.

- A "Notice of Right to Cancel," which informed plaintiff of her right, pursuant to TILA, 15 U.S.C. § 1635, to rescind the agreement within three business days.

- A "Broker Compensation (YSP) and the Fees in Your Transaction," which informed plaintiff of a $10,263.75 broker compensation fee to be paid by Option One to 1st Principle in exchange for plaintiff's agreement to pay a higher interest rate on the refinanced mortgage.

Plaintiff admits that these documents were presented to her at closing and that she signed each of them. She also does not dispute that these documents, on their face, provide the accurate disclosures required by TILA. Yet, she nonetheless contends that she was misled at closing in two respects. First, she contends that in the course of the closing, Samuel advised her that the payment schedule listed on the TILA Disclosure Statement was the final payment schedule, and that the variable interest rate, as disclosed in the other documents, had already been calculated and would

-5-

not affect her payments other than to increase them only twice over thirty years, as she mistakenly thought the payment schedule provided. Second, she contends that the box on the TILA Disclosure Statement marked "Final," which was checked here, confirmed the misrepresentation by Samuel that the payment schedule was fixed.

The two years following the closing were essentially uneventful, as plaintiff made timely payments in accordance with the initial 24-month fixed payment period. On January 17, 2007, as the end of that 24-month fixed-rate period approached, Option One notified plaintiff by mail that the interest rate on her mortgage would increase to 9.75% based on the terms of the loan and the current rate of the agreed-upon index. Specifically, Option One informed plaintiff that her monthly payment would increase to $5,559.53 beginning on March 1, 2007—$641.48 more than the $4,918.05 payment listed in the payment schedule on the January 28, 2005 TILA Disclosure Statement. The letter further advised plaintiff that her "minimum contractual interest rate is 6.75[]%" and that her "maximum contractual interest rate is 12.75[]%."[6] In response to this January 17, 2007 notice, plaintiff sent a February 26, 2007 letter to Option One to express her belief that the notice did not reflect monthly payments consistent with her understanding of the mortgage terms.[7]

Thereafter, plaintiff made at least two payments in accordance with the increased monthly payment amounts. At some point prior to July 30, 2007, plaintiff ceased making payments entirely,

---

[6] Option One subsequently sent plaintiff similar notices of interest rate and payment changes, each separated by six months and providing as follows: (i) a July 17, 2007 notice of an increase to a 10.75% interest rate and $6,129.74 monthly payment, effective September 1, 2007; (ii) a January 27, 2008 notice of a decrease to 10.25% and $5,844.64, effective March 1, 2008; and (iii) a July 17, 2008 notice of a decrease to 9.25% and $5,274.43, effective September 1, 2008. Plaintiff acknowledges receipt of these letters.

[7] Plaintiff may also have sent several other letters to Option One during 2007 which are not in this record, and therefore are presumably immaterial.

and Option One accordingly placed her loan in foreclosure for non-payment. Plaintiff concedes that

since that time, she has lived in the home without making any payments. On August 13, 2007,

Deutsche Bank, holder of the mortgage's secured deed of trust, appointed Equity Trustees, LLC

("Equity") as substitute trustee. Subsequently, by letter dated August 21, 2007, Equity's counsel

notified plaintiff that because she had failed to cure her default on the loan, the residence was

scheduled for a public foreclosure sale on September 5, 2007.

On September 4, 2007, plaintiff filed for Chapter 13 bankruptcy. In her initial Chapter 13

plan filed with the bankruptcy court,[8] plaintiff listed a regular contract payment with creditor Option

One in the amount of $6,774, in addition to an arrearage of approximately $32,000. *In re Roach*, No.

07br12422 (Bankr. E.D. Va. Sept. 19, 2007) (Docket No. 14). According to a letter plaintiff wrote

to her bankruptcy attorney and attached to her pleadings in this case, she met with her bankruptcy

attorney on October 18, 2007 and discussed her contention that the TILA Disclosure Statement was

in conflict with the increased monthly payments that Option One was claiming. Specifically, plaintiff

wrote to her attorney that "no payment action should be initiated with Option One until all legal

matters have been resolved (e.g., truth-in-lending, proof of claim, reset/change payment)" and

referenced an "objection and/or adversary proceeding" that she expected to be filed on her behalf.

Pl.'s Mem. in Opp'n (Docket No. 57), Ex. H, at 2.

---

[8] It is well-settled, of course, that judicial notice, pursuant to Rule 201, Fed. R. Evid., may be taken of facts "not subject to reasonable dispute," including party admissions and other statements in public court records. *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239–40 (4th. Cir. 1989) (taking judicial notice of party's guilty plea in a subsequent civil proceeding); *see also* Charles Alan Wright & Kenneth W. Graham, Jr., 21B *Fed. Prac. & Proc. Evid. 2d* § 5106.4 (2d. ed. and Supp. 2008). Although plaintiff filed a number of documents here that were also filed in her bankruptcy proceedings, judicial notice is appropriately taken with respect to several documents filed in the public record of the bankruptcy proceedings, but not attached to any pleadings in this case.

On December 6, 2007, Deutsche Bank petitioned for relief on its secured note in plaintiff's ongoing bankruptcy proceedings by seeking to lift the automatic stay imposed by 11 U.S.C. § 362. On December 11, 2007, plaintiff filed a letter with the bankruptcy court claiming that Option One had arbitrarily reset her mortgage payments and attaching the TILA Disclosure Statement. *In re Roach*, No. 07br12422 (Bankr. E.D. Va. Dec. 11, 2007) (Docket No. 21). Plaintiff's bankruptcy trustee filed an answer to Deutsche Bank's motion on December 14, 2007, demanding proof of the monthly payment amounts being claimed by Deutsche Bank. *In re Roach*, No. 07br12422 (Bankr. E.D. Va. Dec. 14, 2007) (Docket No. 24). Thereafter, on December 20, 2007, plaintiff, by counsel, formally responded to Deutsche Bank's motion, asserting that she did "not know the exact balance now owed . . . because of an ongoing miscalculation of the interest rate . . . ." Pl.'s Supplemental Mem. in Opp'n (Docket No. 79), Ex. LL. Plaintiff further contended that because of "wrongful calculation of the payments[,] . . . the acceleration of the note was done wrongfully [and] the calculations shown are not accurate." *Id.*

On January 16, 2008, the bankruptcy court held a hearing on Deutsche Bank's motion for relief. At plaintiff's request, the hearing was continued to February 20, 2008, and resolution of Deutsche Bank's motion was deferred. Thereafter, at a February 13, 2008 hearing, the bankruptcy court granted plaintiff's attorney's request to withdraw. *In re Roach*, No. 07br12422 (Bankr. E.D. Va. Oct. 10, 2008) (transcript of Feb. 13, 2008 proceedings) (Docket No. 57). During that hearing, plaintiff's attorney represented that he had advised plaintiff during Fall 2007 to seek separate counsel regarding any potential TILA claims. *Id.* On February 20, 2008, in response to plaintiff's request for a continuance in light of her attorney's withdrawal, the bankruptcy court scheduled a March 19, 2008 hearing on Deutsche Bank's motion for relief, and the bankruptcy court further ordered plaintiff to

make an interim payment to Option One of $5,531 on March 1, 2008. *In re Roach*, No. 07br12422

(Bankr. E.D. Va. Feb. 20, 2008) (Order). Thereafter, on February 27, 2008, plaintiff's bankruptcy

petition was dismissed on her own motion. *In re Roach*, No. 07br12422 (Bankr. E.D. Va. Feb. 27,

2008) (Order). As a result, the bankruptcy court did not address the underlying merits of Deutsche

Bank's motion for relief on its secured note, nor did the bankruptcy court address the merits of

plaintiff's arguments in response regarding the alleged miscalculation of her payments.[9]

Approximately one week later, on March 7, 2008, plaintiff sued the instant defendants and

others alleging, *inter alia*, violations of (i) the Racketeer Influenced Corrupt Organizations Act, 18

U.S.C. § 1961 *et seq.*; (ii) TILA; and (iii) various related state consumer protection laws. On June

---

[9] It also appears, based on the final accounting filed after the dismissal of plaintiff's
bankruptcy petition, that plaintiff never made any payments to Option One or Deutsche Bank
pursuant to the bankruptcy court's February 20, 2008 Order. *See In re Roach*, No. 07br12422
(Bankr. E.D. Va. Mar. 12, 2008) (Docket No. 53) (showing no payments made to Deutsche Bank
or Option One in final report and account).
    This is also consistent with events that unfolded following plaintiff's abatement of her
bankruptcy petition, as the record in this case shows that on March 28, 2008, plaintiff's home
was put up for sale at a public foreclosure auction. Deutsche Bank purchased the home at that
auction and then promptly initiated eviction proceedings in early April 2008, leading plaintiff to
move for a temporary restraining order and preliminary injunction pending resolution of this suit.
Thereafter, plaintiff's motion for a temporary restraining order and preliminary injunction was
withdrawn at her own motion "based upon an agreement between the parties that [d]efendants
[would] not pursue the eviction of [p]laintiff . . . until the conclusion of the within matter."
*Roach v. Option One Mortgage Corp.*, No. 1:08cv225 (E.D. Va. May 6, 2008) (Order). Deutsche
Bank thereafter non-suited its state court eviction action on May 28, 2008.
    Deutsche Bank subsequently re-instituted the eviction proceedings on December 18,
2008, leading plaintiff to file a second motion for a temporary restraining order and preliminary
injunction. At a hearing on plaintiff's motion, defendants, by counsel, "represented that the re-
filing of the eviction proceedings was a result of miscommunication between defendants' counsel
handling this matter and defendants' counsel handling the eviction proceedings." *Roach*, No.
1:08cv225 (E.D. Va. Dec. 30, 2008) (Order). Accordingly, plaintiff's second motion for a
temporary restraining order and preliminary injunction was denied as moot "based upon
defendants' representation that they will not pursue eviction of plaintiff from her residence until
the conclusion of this matter." *Id.*

6, 2008, after oral argument on several motions to dismiss, plaintiff's original complaint was dismissed without prejudice and with leave to file an amended complaint. *Roach v. Option One Mortgage Corp.*, No. 1:08cv225 (E.D. Va. June 6, 2008) (Order).

Thereafter, on July 9, 2008, plaintiff filed an amended complaint, alleging only the TILA claim at issue here.[10] Defendants[11] filed a motion to dismiss, arguing (i) that defendants H&R Block and Deutsche Bank are not subject to the TILA provisions at issue, (ii) that plaintiff's TILA claim is time-barred by TILA's one-year statute of limitations, (iii) that plaintiff's amended complaint fails to allege conduct by defendants that violates TILA, and (iv) that the record shows that defendants complied with all TILA disclosure requirements. In response, plaintiff admits that she filed her claim more than one year after the closing, but argues that TILA's one-year limitations period must be tolled to within one year of the date she field her claim on two grounds—specifically, (i) that Samuel's misrepresentations equitably tolled the one-year period, and (ii) that plaintiff's filing of a bankruptcy petition entitled her to the benefit of statutory tolling.

---

[10] Specifically, the amended complaint alleges that defendants failed to disclose, *inter alia*, (i) the annual percentage rate; (ii) the finance charge; (iii) the amount financed; (iv) the total payments; (v) the payment schedule; (vi) broker and other fees to be paid at settlement; and (vii) plaintiff's right, pursuant to TILA, 15 U.S.C. § 1635, to rescind the loan agreement within three business days of consummation. Notwithstanding these allegations, it became clear at oral argument on defendant's motion to dismiss that plaintiff's TILA claim is *not*, as her amended complaint suggests, that defendants failed to provide her with documents at closing that facially comply with TILA's disclosure requirements; indeed, as plaintiff admitted and is discussed *supra*, the documents plaintiff signed at closing disclosed the variable-rate nature of the mortgage she was assuming. Rather, plaintiff's claim, distilled to its essence, is that the otherwise-adequate disclosures she received at closing were *rendered inadequate* because Samuel misled her to believe that the only variation in her monthly payments would be the two increases in payment amounts listed on the TILA Disclosure Statement's payment schedule.

[11] As discussed *supra* at note 4, plaintiff voluntarily dismissed 1st Principle, a defendant to the amended complaint as written, on July 23, 2008. Accordingly, the remaining defendants are Option One, H&R Block, and Deutsche Bank.

-10-

Defendants' motion, now appropriately treated as a motion for summary judgment,[12] has been fully briefed and argued and is now ripe for disposition.

## II

The analysis of defendants' motion requires answering three questions. First, as a threshold matter, it is necessary to determine whether each defendant is subject to TILA—in other words, whether each defendant is a "creditor" or an "assignee" of a creditor, as defined by TILA. This is so because plaintiff's TILA claim may only proceed against those defendants who are creditors or assignees of creditors. The second question to resolve is whether plaintiff properly filed her TILA claim within TILA's one-year statute of limitations. If she failed to do so, her claim will be barred unless she can show that the one-year limitations period must be tolled to a date within one year of the date she properly filed her claim, which is the third question presented.

Each of these questions is separately addressed.

## A.   Option One Is the Only Defendant Subject to TILA's Requirements

The first question is easily answered. In the context of a loan transaction such as the mortgage refinancing agreement at issue, TILA requires a "creditor" to make several disclosures[13] prior to

---

[12] *See* Rule 12(d), Fed. R. Civ. P. The summary judgment standard is too well-settled to require elaboration here. In essence, summary judgment is appropriate under Rule 56, Fed. R. Civ. P., only where, on the basis of undisputed material facts, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Importantly, to defeat summary judgment the non-moving party may not rest upon a "mere scintilla" of evidence, but must set forth specific facts showing a genuine issue for trial. *Id.* at 324; *Anderson*, 477 U.S. at 252.

[13] The required disclosures include, *inter alia*, (i) the amount financed, (ii) the finance charge, (iii) the annual percentage rate, (iv) the total of payments, (v) the payment schedule, (vi) descriptive explanations of the disclosed terms, and (vii) a series of separate disclosures with respect to any variable rate mortgages. *See* 15 U.S.C. § 1638(a).

consummation of any such loan transaction. 15 U.S.C. § 1638. Importantly, TILA defines a "creditor," the party responsible for providing the disclosures, as follows:

> The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(f). Thus, TILA's disclosure provisions only apply to a party (i) that regularly extends consumer credit as set forth in the statute if that party (ii) is also the entity to which the debt is initially payable. *Id.*; *see also Cetto v. LaSalle Bank Nat'l Ass'n*, 518 F.3d 263, 270 (4th Cir. 2008) (observing that "the first sentence of § 1602(f) *requires* that *both* elements of the two-part test be met for determinations of 'creditor' status" (emphasis in original)). A creditor's "assignee," however, may also be held liable for a creditor's TILA violations in loan transactions involving real property if the assignment is voluntary and the TILA violation at issue "is apparent on the face of the disclosure statement provided in connection with such transaction pursuant to this subchapter." 15 U.S.C. § 1641(e)(1).[14] Thus, only those defendants who meet the definition of a "creditor" or an

---

[14] Section 1641(e)(2) further defines "apparent on the face of the disclosure statement" as requiring the presence of one of the two following circumstances:

> (A) the disclosure can be determined to be incomplete or inaccurate by a comparison among the disclosure statement, any itemization of the amount financed, the note, or any other disclosure of disbursement; or

> (B) the disclosure statement does not use the terms or format required to be used by this subchapter.

§ 1641(e)(2)(A)–(B).

"assignee" of a creditor are proper defendants here.[15]

Here, it is clear that Option One is a "creditor," and Option One does not contest that it was required to comply with TILA's disclosure provisions when it consummated the refinancing agreement with plaintiff on January 28, 2005. It is equally clear, however, that neither H&R Block, nor Deutsche Bank, were creditors or assignees of creditors as defined by TILA. First, because neither H&R Block, nor Deutsche Bank, were the party to which the debt was initially payable, neither is a "creditor" pursuant to § 1602(f). Further, because plaintiff does not allege a TILA violation apparent on the face of the disclosure statement, neither H&R Block, nor Deutsche Bank, qualify as Option One's "assignee" pursuant to § 1641(e). Indeed, plaintiff does not contest that the disclosure statement *facially* complies with TILA; rather, plaintiff's claim is that Samuel's oral misrepresentations *negated the otherwise adequate and accurate disclosures* in the closing documents. Accordingly, H&R Block and Deutsche Bank are not proper defendants, and are thus entitled to summary judgment on plaintiff's TILA claim.

**B.     Plaintiff Did Not File Her TILA Claim within One Year**

Because Option One is a TILA "creditor," it is next necessary to address whether plaintiff filed her claim within TILA's one-year statute of limitations. Specifically, TILA requires that any TILA claim must be brought "within one year from the date of the occurrence of the [TILA]

---

[15] Although neither Samuel, nor 1st Principle, are defendants in this suit, it is important to note that mortgage brokers are generally not considered "creditors" pursuant to TILA. *See Cetto*, 518 F.3d at 277 ("[T]he definition of a 'creditor' in § 1602(f) . . . does not reach mortgage brokers in transactions in which they act only in the role of broker, even though they may have acted as a statutorily-defined 'creditor' in unrelated transactions.").

violation." 15 U.S.C. § 1640(e).[16] Here, the TILA violation at issue—Samuel's alleged

misrepresentations and plaintiff's alleged misunderstanding regarding the payment schedule listed

on the TILA Disclosure Statement—are alleged to have occurred on January 28, 2005, the date of

the closing. Thus, because plaintiff filed her TILA claim more than three years after that date, she

did not comply with TILA's one-year statute of limitations. Accordingly, absent an exception to the

statute of limitations, plaintiff's TILA claim is barred as untimely.

C.      **Plaintiff Has Not Shown that the One-Year Statute of Limitations Must Be Tolled to a Date within One Year of the Date She Filed Her TILA Claim**

        It is next necessary, then, to determine whether the one-year limitations period must be tolled

to a date within one year of the date plaintiff filed her TILA claim. In this respect, plaintiff

essentially argues that the one-year period must be tolled here on two separate and distinct

grounds—namely, (i) that the one-year period must be equitably tolled because Samuel's alleged

misrepresentations fraudulently concealed her claim, and (ii) that the one-year period was tolled by

---

[16] Plaintiff also alleges that defendant did not disclose her three-day right to rescind the loan agreement pursuant to § 1635(f). Yet, the documentary record flatly contradicts this claim; indeed, at closing plaintiff signed a notice of her right to cancel the refinancing agreement within three business days. Further, because plaintiff's allegation of fraudulent concealment, as discussed *supra*, is, at its core, that Samuel misrepresented the *mortgage payment schedule to be fixed as listed in the TILA Disclosure Statement*, plaintiff's allegation of fraudulent concealment does not apply to the alleged failure to disclose her three-day right to rescind. And in any event, plaintiff's § 1635(f) right must be exercised within three years, and that three-year period is a jurisdictional statute of repose that is not subject to equitable tolling. *See Jones v. Saxon Mortgage, Inc.*, 537 F.3d 320, 327 (4th Cir. 1998) ("Because § 1635(f) is a statute of repose, the time period stated therein is typically not tolled for any reason."), *aff'g* 980 F. Supp. 842, 846 (E.D. Va. 1997) (finding that because equitable tolling would be inappropriate in any event, it was unnecessary to determine whether § 1635(f) is a statute of limitations subject to equitable tolling or a statute of repose not subject to tolling). Thus, even assuming plaintiff had a three-year right to rescind, because she did not exercise that right within three years of entering the refinancing agreement, and because equitable tolling does not apply to § 1635(f), plaintiff's TILA claim pursuant to § 1635(f) is meritless.

statute during pendency of her Chapter 13 bankruptcy proceedings. As explained below, defendants are not entitled to summary judgment with respect to plaintiff's allegations of fraudulent concealment because of disputed questions of material fact, but defendants are entitled to summary judgment with respect to plaintiff's claim that her bankruptcy proceedings tolled TILA's one-year statutory period because plaintiff voluntarily abated those proceedings. Accordingly, plaintiff's claim is time-barred because, even assuming she could prove her allegations of fraudulent concealment, she failed to file her claim within one year of discovering the alleged fraud.

> (1)   *Plaintiff's Allegation that the Alleged Fraud Compels Equitable Tolling Presents a Disputed Question of Material Fact*

First, with respect to plaintiff's claim of equitable tolling, it is true, as plaintiff asserts, that TILA's one-year statute of limitations is generally subject to equitable tolling where a defendant has fraudulently concealed the facts underlying a TILA violation. *See Barnes v. West, Inc.*, 243 F. Supp. 2d 559, 563 (E.D. Va. 2003) ("[C]onsistent with every circuit to address the issue, it is appropriate to apply the rule here that TILA is properly subject to equitable tolling when there has been fraudulent concealment of the plaintiff's cause of action.").[17] Of course, in order to justify equitable tolling on the basis of fraudulent concealment, a plaintiff must prove (i) that the party asserting the statute of limitations "concealed facts that are the basis of the plaintiff's claim"; (ii) that the "plaintiff failed to discover those facts within the statutory period"; and (iii) that the plaintiff failed to do so "despite . . . the exercise of due diligence." *Id.* (citing *Supermarket of Marlinton, Inc. v. Meadow*

---

[17] *See also Jones v. TransOhio Savs. Ass'n*, 747 F.2d 1037, 1041 (6th Cir. 1984) (finding that TILA's statute of limitations is subject to equitable tolling because "to conclude otherwise is to accede to the machinations of those who would hope to thwart Congress' purpose and ability of the federal courts to ensure that purpose's fruition: the prevention of fraud in consumer credit transactions"), *quoted in Barnes*, 243 F. Supp. 2d at 563.

*Gold Diaries, Inc.* 71 F.3d 119, 122 (4th Cir. 1995)). Plaintiff claims she can adduce such proof because Samuel's alleged oral misrepresentations, which plaintiff contends Samuel made as Option One's agent, concealed her TILA claim until she discovered that Samuel had misled her. Thus, it is necessary to determine (i) whether the alleged misrepresentations by Samuel, if they occurred, would constitute fraudulent concealment of a TILA violation;[18] and (ii) if so, whether those misrepresentations by Samuel are attributable to Option One. For the reasons that follow, defendant is not entitled to summary judgment on these issues at this time because both present disputed questions of material fact.

First, it appears that plaintiff's allegations regarding Samuel's misrepresentations, if true, would demonstrate both a TILA violation and fraudulent concealment of that violation. As a threshold matter, it is important to note that a plaintiff's proof of fraudulent concealment "may include acts of concealment involved in the TILA violation itself." *Id.* Here, plaintiff alleges that Samuel misled her to believe the payment schedule in the TILA Disclosure Statement was a fixed

---

[18] Plaintiff asserts that the word "Final," included on the TILA Disclosure Statement, further confirmed Samuel's oral misrepresentations that the payment schedule listed on the statement was a fixed, final payment schedule. Defendants counter, of course, that the word "Final" merely reflected that the statement was the final *disclosure statement*, not that the payment schedule listed thereon was final and fixed. Moreover, defendants point out that the TILA Disclosure Statement also includes a checked box marked "Variable Rate," located immediately beneath the payment schedule and followed by the statement, "This transaction is subject to a Variable Rate Feature. Disclosures about Variable Rate Feature have been provided to you earlier." It is also worth noting that plaintiff does not allege that she specifically asked Samuel about the significance of the word "Final" on the disclosure statement. In any event, plaintiff's argument with respect to the inclusion of the word "Final" on the disclosure statement is, in essence, that it further *confirmed the misrepresentations made by Samuel*, and not that the inclusion of the word "Final," by itself, would have been sufficient to constitute fraudulent concealment. Accordingly, the analysis of plaintiff's fraudulent concealment allegation proceeds on the basis that the inclusion of the word "Final," without more, would be insufficient to constitute an act of affirmative misconduct constituting fraudulent concealment.

-16-

payment schedule, thus concealing the basis of her TILA claim—namely, that her monthly payments could actually increase above those listed on the TILA Disclosure Statement. Plaintiff further alleges that she did not discover the true variable-rate nature of her mortgage during the one-year statutory period, and plaintiff alleges that because of Samuel's misrepresentations, she had no reason to exercise due diligence to discover the variable-rate nature of her mortgage during the statutory period. Thus, plaintiff's allegation, if true, may establish fraudulent concealment of a TILA violation sufficient to provide equitable tolling. Although Option One disputes whether any misrepresentations were made, and points out that any such misrepresentations flatly contradict the closing documents plaintiff signed, it is appropriate in the summary judgment analysis to assume that the misrepresentation occurred. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

That does not end the inquiry, however, as in proving the first element of fraudulent concealment—that a defendant concealed the basis of a plaintiff's claim—the Fourth Circuit has held that a plaintiff "must provide evidence of 'affirmative acts of concealment' . . . *by the defendant*[]." *Barnes* 243 F. Supp. 2d at 563 (emphasis added). This is so because "the essence of a fraudulent concealment claim is that the plaintiff 'has been induced or tricked by [an] *adversary's* misconduct into allowing the deadline to pass.'" *Id.* (quoting *Chao v. Va. Dep't of Transp.*, 291 F.3d 276, 283 (4th Cir. 2002) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990))) (emphasis added); *see also Jones v. Saxon Mortgage, Inc.*, 980 F. Supp. 842, 846 (E.D. Va. 1997) ("[I]t is a basic rule that there must be an identity between the party pleading the limitation period and the party who allegedly perpetrated the act of concealment." (citing *Orsi v. Kirkwood*, 999 F.2d 86, 90 n. 1 (4th Cir.

1993))). Here, plaintiff's allegation—not clearly raised in her pleadings[19] but clearly raised at oral argument on the instant motion—is that Option One is liable for Samuel's actions because Samuel was acting as Option One's agent when he made the misrepresentations at issue. And it does appear that an agent's affirmative, oral misrepresentations regarding provided disclosures might, in some cases, cause the agent's principal to be liable for both a TILA violation and fraudulent concealment of that violation. *See Barnes*, 243 F. Supp. 2d at 564–65, n. 12 (observing in *dicta* that "affirmative misrepresentations" by defendant's agent might provide evidence of fraudulent concealment by the principal).[20] Thus, were plaintiff able to show a principal-agent relationship between Option One and Samuel, or between Option One and 1st Principle, Samuel's employer, Samuel's allegedly fraudulent actions might be attributable to Option One for purposes of plaintiff's fraudulent concealment allegation.

---

[19] Of course, "[t]he Court is mindful of its duty to construe liberally the complaints of *pro se* litigants." *Watson v. Hall*, No. 1:07cv928, 2008 WL 149133, at *2 n. 2 (E.D. Va. Jan. 8, 2008) (citing *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va.1999)). Here, construction of plaintiff's amended complaint is difficult, as 1st Principle, Samuel's employer, was a defendant when the amended complaint was filed, and thus 1st Principle is referenced as a defendant, not an agent, throughout that pleading. In any event, plaintiff does allege in her amended complaint that Option One's "purpose was to originate and acquire non-prime products through a national network of brokers and lenders [that] . . . included 1st Principle Mortgage." Pl. Am. Compl. ¶ 4. Accordingly, plaintiff's amended complaint, read liberally, sufficiently pleads an allegation of a principal-agency relationship between Option One and 1st Principle, Samuel's employer.

[20] *See also Johnson v. Long Beach Mortgage Loan Trust*, 451 F. Supp. 2d 16, 52 (D.D.C. 2006) (rejecting claim of fraudulent concealment by mortgage broker "absent proof of an agency relationship" between the broker and creditor); *Iannuzzi v. Wash. Mut. Bank*, No. 07cv964, 2008 WL 3978189, at *8 n. 5 (E.D.N.Y. Aug. 21, 2008) (observing that a TILA creditor, as "a principal[,] . . . can potentially be liable for the acts committed by its agent"); *In re Bumpers*, No. 03c111, 2003 WL 22119929, *8 (N.D. Ill. Sept. 11, 2003) (TILA creditor not liable for inconsistent TILA disclosure provided by mortgage broker at closing because plaintiff was "unable to produce any evidence of an agency relationship" between the mortgage broker and the creditor).

Although the current record does not clearly establish the nature of the relationship between Samuel and Option One or between 1st Principle and Option One, it is nonetheless appropriate, for purposes of the summary judgment analysis, to assume without deciding that plaintiff could establish the necessary relationship and that plaintiff's allegation of fraudulent concealment would thus equitably toll TILA's statute of limitations. *See Anderson*, 477 U.S. at 255.

Yet, even this does not end the analysis, as any tolling triggered by fraudulent concealment continues only until plaintiff discovered the fraud or, by the exercise of reasonable diligence, should have discovered the fraud. *See Barnes* 243 F. Supp. 2d at 563. This is sensible, as "[i]gnorance in the face of facts discoverable upon simple inquiry does not suffice" to justify equitable tolling. *Bausch v. Philatelic Leasing, Ltd.*, No. 93-1685, 1994 WL 446758, at *6 (4th Cir. Aug. 19, 1994) (unpublished) (citing *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218 (4th Cir. 1987); *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1416 (9th Cir. 1987) ("Mere ignorance of the cause of action does not, in itself, toll the statute.")). Plaintiff here became aware of the difference between what she alleges was the fixed nature of the payment schedule as allegedly represented by Samuel and the variable nature of the payment schedule as described in the disclosure documents when Option One notified her in January 2007 that her monthly payment would increase more than she had anticipated, that future variations in payment amounts may occur, and that her interest rate could rise as high as 12.75% under certain circumstances. At that point, she was on clear notice that any representation by Samuel to the contrary was untrue and unreliable. Thus, even assuming plaintiff could establish equitable tolling owing to Samuel's alleged misrepresentations, the tolling would end in January 2007 when she received Option One's letter. At that point, TILA's one-year limitations period would commence to run. Accordingly, because plaintiff did not file this

lawsuit until March 2008, more than one year after discovering the facts underlying her present TILA claim, her TILA claim is time-barred absent an additional exception to the statute of limitations.

Plaintiff seeks to avoid this result by arguing that she did not discover the facts underlying her TILA claim when she received the January 2007 notice that her payments would increase. In essence, plaintiff argues that she believed the increased payment amounts were a mistake resulting from Option One's miscalculation, and that she did not know until some time later—not specified by plaintiff in any pleading—that she may have had a TILA claim. Plaintiff's argument, however, misapprehends the requirement that she exercise due diligence in investigating her claim. *See Barnes* 243 F. Supp. at 563. It is undisputed that plaintiff became aware of a discrepancy between her alleged understanding and the payments requested by Option One in January 2007, when she received Option One's letters that clearly detailed the variable-rate nature of her mortgage. At that time, equitable tolling ceased. Option One, by clearly setting forth the variable-rate nature of plaintiff's mortgage, provided plaintiff with the underlying facts she needed to exercise due diligence and assert a timely TILA claim. She failed to do so.

(2) *Plaintiff's Filing of a Chapter 13 Bankruptcy Proceeding Did Not Toll the One-Year Period*

Finally, it is necessary to address plaintiff's contention[21] that her claim is nonetheless timely because the one-year statutory period, even if it commenced in January 2007, was tolled again during pendency of her Chapter 13 bankruptcy proceedings between September 2007 and February 2008.

---

[21] Again, although plaintiff does not unambiguously raise this issue in her pleadings, she nonetheless does claim in her amended complaint that she "filed for bankruptcy protection pursuant to Chapter 13, . . . in which [proceedings] [she] had objected to the TILA violations." Pl. Am. Compl. ¶ 32. Thus, read liberally, plaintiff has alleged that her bankruptcy proceedings tolled the statute of limitations. *See Watson*, 2008 WL 149133, at *2 n. 2 (citing *Bracey*, 55 F. Supp. 2d at 421)

It is true that where a debtor files a bankruptcy petition before the expiration of a statute of limitations, the Bankruptcy Code permits the bankruptcy trustee to file the claim on the debtor's behalf provided the trustee does so either before the claim's statutory period expires or before two years has elapsed from the time the bankruptcy petition was filed. *See* 11 U.S.C. § 108(a).[22] But importantly, § 108(a)'s plain language precludes its application here. Specifically, because § 108(a) provides that "the *trustee* may commence such [otherwise time-barred] action" within the two-year extended period, a two-year extension pursuant to § 108(a) is limited to circumstances where, unlike here, a claim is *both* commenced during pendency of the bankruptcy proceedings *and* commenced by someone acting as the bankruptcy trustee. *Id.* (emphasis added). Thus, when plaintiff voluntarily abated her bankruptcy proceedings in February 2008, any § 108(a) extension benefitting her bankruptcy estate was extinguished because her bankruptcy estate then ceased to exist. Similarly, because no bankruptcy proceeding was ongoing when plaintiff filed this claim in March 2008, neither plaintiff, nor any other party, was a "trustee" entitled to commence this claim during any period extended by § 108(a).[23] Accordingly, because plaintiff is not entitled to the benefit of a §

---

[22] Specifically, § 108(a) provides, in pertinent part, as follows:

(a) If applicable nonbankruptcy law . . . fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) two years after the order for relief.

11 U.S.C. § 108(a).

[23] It is worth noting that § 108(a)'s plain language only explicitly grants the benefit of its extension to a bankruptcy "trustee," and not to a bankruptcy debtor. Of course, it is well-settled

-21-

108(a) extension, her claim is time-barred, and Option One is thus entitled to summary judgment.

Importantly, this result is consistent with the purpose of § 108(a), as "the benefit of the extension granted by § 108(a) is for the benefit of the estate, and is, effectively, personal to the trustee." *In re Marshall*, 307 B.R. 517, 520 (Bankr. E.D. Va. 2003); *see also In re Ranasinghe*, 341 B.R. 556, 564 (Bankr. E.D. Va. 2006) (observing that the "stated policy behind § 108 . . . [is to] allow[] the trustee additional time to discover and evaluate potential causes of action after stepping into the shoes of the debtor." (internal quotation omitted)). Thus, where the bankruptcy proceeding is voluntarily abated, neither a bankruptcy estate, nor a bankruptcy trustee, exist to receive the benefit of a § 108(a) extension. This is sensible, as a contrary rule would lead to an absurd result—namely,

---

that in a Chapter 11 bankruptcy in which no trustee is appointed, the debtor, as a "debtor in possession," is entitled to the benefit of a § 108(a) extension because 11 U.S.C. § 1007(a) grants a Chapter 11 debtor in possession all of the rights of a Chapter 11 trustee, with the exception of the right of compensation. *See In re Ranasinghe*, 341 B.R. 556, 564 (Bankr. E.D. Va. 2006) (observing that Chapter 11 debtor in possession is "clearly entitled to the benefit of the § 108(a) extension"); *Johnson v. First Nat'l Bank of Montevideo*, 719 F.2d 270, 278 n. 11 (8th Cir. 1983) (same); *In Re Dawson*, No. 04br531, 2008 WL 1700419, at *9 n. 11 (Bankr. D.D.C. April 9, 2008) (same). Indeed, "[b]y contrast, in a [C]hapter 7 case or when a trustee is serving in a [C]hapter 11 case, only the trustee and not the debtor receives the benefit of the § 108(a) extension." *Ranasinghe*, 341 B.R. at 564. In the Chapter 13 context, however, a more difficult question is presented, as the Bankruptcy Code provides for a "more limited grant of power" to a Chapter 13 debtor to act as a trustee than the power granted to a Chapter 11 debtor in possession. *Id.* Accordingly, both courts and commentators have disagreed with respect to whether a Chapter 13 debtor is entitled to a § 108(a) extension. *Compare, e.g., id.* at 565 (Chapter 13 debtor does not receive benefit of § 108(a) tolling) *and* 1 William L. Norton, Jr., *Norton Bankruptcy Law & Practice* § 16:1 (3d ed. 2009) (same) *with Dawson*, 2008 WL 1700419, at * 8–17 (Chapter 13 debtor does receive benefit of § 108(a) tolling) *and* 2 Matthew R. Bender & Co., *Collier on Bankruptcy* ¶ 108.02[3] (15th ed. rev. 2008) (same). In any event, it is unnecessary to resolve that difficult question here, as even the interpretation of § 108(a) that extends its definition of "trustee" to Chapter 13 bankruptcy debtors only does so where the Chapter 13 debtor "su[es] *pursuant to the powers of a trustee.*" *Dawson*, 2008 WL 1700149, at *15 (emphasis added). Thus, where, as here, a Chapter 13 debtor voluntarily abates bankruptcy proceedings, that debtor relinquishes any right to act "pursuant to the powers of a trustee" and accordingly, any benefit of a § 108(a) extension.

any potential plaintiff could obtain an automatic extension of a statute of limitations that expires less than two years from a given date simply by filing a bankruptcy petition and then voluntarily dismissing it immediately thereafter. Moreover, the result reached here is also consistent with the analogous and well-settled principle that a " 'statute of limitations is not tolled by bringing an action that later is dismissed voluntarily . . . .' " *Neal v. Xerox Corp.*, 991 F. Supp. 494, 498 (E.D. Va. 1998) (quoting Charles A. Wright & Arthur R. Miller, 9 *Federal Practice & Procedure* § 2367 (1995)); *see also Braxton v. Va. Folding Box Co.*, 72 F.R.D. 124, 126 (E.D. Va. 1976) ("Where an action is voluntarily dismissed without prejudice, the parties are left as if the action had never been brought."). Thus, because plaintiff chose to abate her bankruptcy proceeding, she chose to relinquish any benefit pursuant to § 108(a) that filing a bankruptcy proceeding may have given to her bankruptcy trustee.[24]

Plaintiff's final argument in this regard is also unavailing. She argues that TILA's one-year statute of limitations must be tolled during at least part of her bankruptcy proceedings because she asserted her TILA claim in response to Deutsche Bank's motion for relief from the bankruptcy

---

[24] It is also worth noting that had Congress intended to extend the statute of limitations for a bankruptcy debtor's claims generally, as opposed to in the limited circumstance where a bankruptcy trustee brings a claim during pendency of bankruptcy proceedings, it clearly knew how to do so. Indeed, in § 108(c), Congress provided that where the statute of limitations for an individual's claim against a bankruptcy debtor "has not expired before the date of the filing of the petition, then such *period* does not expire until the later of" either its original tolling date or sixty days after any automatic stays have lifted." 11 U.S.C. § 108(c) (emphasis added). Thus, whereas § 108(a) extends the time within which "the trustee may commence such action," § 108(c) extends the "period" itself without limiting the beneficiary of that extension to a particular type of plaintiff. The distinction is a sensible one, as the bankruptcy debtor only receives tolling benefit from the decision to file if the debtor follows through and proceeds in bankruptcy. By contrast, the debtor's creditors, who suffer the burden of an automatic stay on their claims when the debtor chooses to file for bankruptcy, receive the offsetting benefit of an extension of the statute of limitations on any claims that were timely before the debtor filed for bankruptcy and would have otherwise expired during pendency of the bankruptcy proceeding.

proceeding's automatic stay. This argument fails to persuade because her defensive assertion of her TILA claim in her bankruptcy proceedings does not comply with TILA's requirement that an *action be brought* within one year. Indeed, the plain language of § 1640(e) distinguishes between the filing of an affirmative claim and the raising of a TILA violation in a defensive context. Specifically, § 1640(e) states, in pertinent part, as follows:

> Any *action* under this section *may be brought* in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation. This subsection does not bar a person from *asserting a violation* of this subchapter *in an action* to collect the debt which was brought more than one year from the date of the violation *as a matter of defense by recoupment or set-off in such action . . . .*

15 U.S.C. § 1640(e) (emphasis added). Importantly, this language specifically provides that a borrower may assert a TILA violation "as a matter of defense by recoupment or set-off" even after the one-year statute of limitations has expired. Thus, § 1640(e) recognizes the fundamental difference between a borrower's initiation of a lawsuit by filing of a claim, which must occur within one year, and the defensive assertion of a TILA violation in an action brought by a TILA creditor, which a borrower may make at any time in *response* to the creditor seeking payment of the debt. Accordingly, because plaintiff's assertions during her bankruptcy proceedings of the alleged TILA violation were defensive in nature, those assertions do not satisfy § 1640(e)'s requirement that a TILA plaintiff bring a claim within one year.[25]

_____

[25] Nor does plaintiff's mention of her concerns during her bankruptcy proceeding provide for equitable tolling on the basis that plaintiff "actively pursued [her] judicial remedies by filing a defective pleading during the statutory period . . . ." *Chao*, 291 F.3d at 283 (quoting *Irwin*, 498 U.S. at 96). Importantly, the Fourth Circuit has recognized "[t]he commencement of an action in a clearly inappropriate forum . . . will not toll the statute of limitations" under the "defective pleading" principle. *Shofer v. Hack Co.*, 970 F.2d 1316, 1319 (4th Cir. 1992). As the Fourth Circuit noted in *Shofer*, this is consistent with *Burnett v. New York Central Railroad Co.*, 380 U.S. 424 (1965), the seminal Supreme Court case for the "defective pleading" principle. In

In sum, even assuming that plaintiff could show fraudulent concealment requiring equitable tolling until January 2007, she nonetheless failed to comply with TILA's statute of limitations because she did not file her claim here within one year of becoming aware of the discrepancy between her alleged misunderstanding and the variable-rate nature of the mortgage she had assumed. Instead, she waited more than one year, and because none of her asserted explanations for that delay warrants further tolling, her TILA claim is time-barred. In this respect, it is important to remember that the courts' narrow application of equitable tolling to limited circumstances "does not spring from miserliness. Rather, equitable tolling 'must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes.' " *Gayle v. United Parcel Serv., Inc.* 401 F.3d 222, 226 (4th Cir. 2005) (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)). Indeed, even where a plaintiff does not intend to bring an untimely claim, "the principles of equitable tolling . . . do not extend to what [are] at best . . . garden variety claim[s] of excusable neglect." *Irwin*, 498 U.S. at 96. And in this case, although plaintiff alleges individualized hardship that may, if proven, deserve sympathy, the law does not provide her with a remedy in the form

---

*Burnett*, the Supreme Court applied equitable tolling where a plaintiff brought a claim pursuant to the Federal Employers' Liability Act ("FELA") in state court within FELA's statute of limitations, served the defendant with process, had its claim dismissed by the state court for improper venue, and then filed "the identical action" in federal court after the statute of limitations had expired. *Id.* at 434–45, *cited in Shofer*, 970 F.2d at 1318–19. By contrast, in *Shofer*, the Fourth Circuit did not apply equitable tolling because the plaintiff's claim pursuant to the Employee Retirement Income Security Act was within the exclusive jurisdiction of the federal courts; accordingly, although the plaintiff had filed a claim in state court within the applicable statutory period, the plaintiff did not receive the benefit of equitable tolling during the pendency of the state suit. *Id.* at 1319. In any event, in both *Shofer* and *Burnett*, the plaintiffs seeking equitable tolling rested their arguments on the improper *filing* of a lawsuit asserting the same claims, not the mere defensive "raising" of their claims in some other proceeding.

sought here.[26]

For these reasons, defendants are entitled to summary judgment on plaintiff's TILA claim.

An appropriate Order will issue.

Alexandria, Virginia
January 21, 2009

_____/s/_____
T. S. Ellis, III
United States District Judge

---

[26] It is important to observe, of course, that this decision does *not* address whether plaintiff may have non-time-barred, non-TILA claims against these defendants or whether plaintiff may have claims, pursuant to TILA or otherwise, against parties not named in this lawsuit.